# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| WYATT McMULLEN, | ) | |
| | ) | |
| Employee-Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. N24A-07-001 FWW |
| | ) | |
| PETER D. FURNESS ELECTRIC CO., | ) | |
| | ) | |
| Employer-Appellee. | ) | |

Submitted: November 26, 2024
Decided: February 11, 2025

## MEMORANDUM OPINION

*On Appeal from the Industrial Accident Board*:
**AFFIRMED**.

Jennifer D. Donnelly, Esquire, KIMMEL, CARTER, ROMAN, PELTZ & O'NEIL, P.A., 56 W. Main Street, Newark, Delaware 19702; Attorney for Employee-Appellant Wyatt McMullen.

Andrew J. Carmine, Esquire, ELZUFON AUSTIN & MONDELL, P.A., 300 Delaware Avenue, Suite 1700, P.O. Box 1630, Wilmington, Delaware 19801; Attorney for Employer-Appellee Peter D. Furness Electric.

**WHARTON, J.**

# I.    INTRODUCTION

Wyatt McMullen ("McMullen") filed a Notice of Appeal on July 19, 2024, seeking a review of the July 3, 2024 decision by the Industrial Accident Board ("Board"). McMullen contends that the Board erred when it denied his Petition to Determine Compensation Due, concluding that he had failed to establish that a work accident had occurred, or alternatively, if such an accident did occur, it was not causally related to the injury for which he seeks payment of medical expenses and total disability benefits.

In considering this appeal, the Court must determine whether the Board's decision is supported by substantial evidence and is free from legal error. Specifically, the Court must determine whether the Board erred in concurring with the opinions of Dr. Eric T. Schwartz, M.D. and disagreeing with the opinions of Dr. Jeremie Axe, M.D.[1] in finding that the injury for which McMullen seeks payment of medical expenses and total disability either was not a work accident, or if it was a work accident, such accident was not causally related to his injury. Upon consideration of the pleadings and the record below, the Court finds that the Board's decision was supported by substantial evidence in the form of the opinions of Dr. Schwartz. Further, the Board did not err as a matter of law when it denied

---

[1] There are two Dr. Axes in this case – Jeremie and Michael. In order to avoid confusion, the Court refers to them by their full names.

McMullen's Petition to Determine Compensation Due. Accordingly, the Board's decision is **AFFIRMED**.

## II. FACTUAL AND PROCEDURAL CONTEXT

The Board set out the procedural posture of the case as well as a detailed summary of the evidence presented at the hearing before the Board on March 14, 2024.[2] Since neither party takes exception to the Nature and Stage of the Proceedings or the Summary of the Evidence set out in the Board's decision, the Court accepts and states these conclusions in the order and manner in which the Board discussed them in its decision.[3] On August 22, 2023, McMullen filed a Petition to Determine Compensation Due with the Board.[4] McMullen alleged that he injured his left knee in a compensable work accident while he was working for Peter D. Furness Electric Co. ("Employer") on January 21, 2023.[5] He seeks payment of medical expenses and total disability benefits from the date when he had surgery - August 11, 2023 - onward.[6] There is no dispute that the medical treatment was reasonable and necessary for the condition of McMullen's left knee.[7]

---

[2] *Wyatt McMullen v. Peter D. Furness Electric*, No. 1532427, at 2-11, (I.A.B. July 3, 2024), Ex. A, D.I. 12 (hereinafter *McMullen*, No. 1532427").
[3] *Id*.
[4] *Id.* at 2.
[5] *Id*.
[6] *Id*.
[7] *Id*.

At the time of the Hearing, McMullen testified that he was twenty-one years old.[8] When he was younger, McMullen participated in wrestling and incurred a number of injuries to his left knee.[9] In 2017, he hyperextended the knee and heard an audible pop.[10] In January 2018, he underwent an anterior cruciate ligament ("ACL") reconstruction and fixation.[11] McMullen reinjured the left knee in December 2018 and underwent another ACL reconstruction surgery.[12] He does not dispute that he reinjured the knee again in June 2019 and had a third ACL reconstruction surgery in March 2020.[13]

McMullen stated that there was an upward trajectory regarding his left knee after that surgery.[14] In June 2020, it was documented that the knee had an excellent range of motion.[15] McMullen did not have difficulty moving the knee at that time.[16] He received post-surgical physical therapy until August 2020, after which the therapist deemed him "100%."[17] In January 2022, McMullen underwent a procedure, a button removal, to remove a piece of dislodged hardware that was near

---

[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.* at 3.
[15] *Id.*
[16] *Id.*
[17] *Id.*

the surface of his knee.[18]  But, that surgery did not involve his ACL.[19]  At that time, Dr. Jeremie Axe told him that the knee was stable and there was nothing to worry about.[20]

Despite having a prior history of knee issues, McMullen explained that he had no left knee complaints or physical restrictions for the year prior to the work event.[21] He worked full time with no restrictions during that year.[22]  He went to the gym regularly and engaged in weightlifting both before and after the work event.[23] McMullen would not dispute that he went to the gym three to six times per week.[24] The last time McMullen saw Dr. Jeremie Axe before the work accident was on March 4, 2022, and there was no discussion about the need for any further surgery.[25]

McMullen began working for Employer around January 2022.[26]  He was an electrician apprentice and a member of the electrical workers' union, IBEW Local 313.[27]  He had worked for other electrical companies prior to working for Employer.[28]  He normally worked from 7:00 a.m. to 3:30 p.m. while working for

---

[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*

Employer.[29]  Sometimes he worked overtime.[30]  In December 2022 and January 2023, McMullen would work out at the gym roughly every other day.[31]  He could bench press about two-hundred and twenty-five pounds and curl thirty pounds.[32]  He did not "deadlift" weights, but he did engage in other exercises designed to target his leg muscles.[33]

McMullen testified that on January 21, 2023, he was scheduled to work a ten-hour shift, which is considered overtime.[34]  However, he was injured about seven or eight hours into the shift.[35]  McMullen had gone outside to pick up reels of copper wire that were about six to eight inches in diameter and weighed about twenty to twenty-five pounds.[36]  McMullen picked up two reels of the copper wire and balanced one on his right shoulder while holding the other one in his left hand.[37]  His left knee buckled as soon as he started walking.[38]  It kept hurting despite his efforts to "walk it off."[39]  McMullen recalls that the reel was in contact with his left knee,

---

[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.* at 3-4.
[37] *Id.* at 4.
[38] *Id.*
[39] *Id.*

but only because he was holding the reel in his left hand.[40]  There was no impact of the reel against his knee.[41]  McMullen denies that the reel "slammed" into his left knee even though the reel was in contact with the knee when the knee gave out.[42]  McMullen was walking during the accident, but he is uncertain if there was any "twisting" event.[43]

McMullen stated that he reported that his knee buckled.[44]  He filled out an injury report and went to an urgent care facility.[45]  At the urgent care facility, McMullen reported that he had some pain that felt both sharp and dull at the same time.[46]

McMullen returned to see Dr. Jeremie Axe on January 25, 2023.[47]  Dr. Jeremie Axe drained a small amount of fluid from McMullen's left knee and sent him for tests and physical therapy.[48]  An MRI was taken on McMullen's left knee in April 2023.[49]  McMullen discussed the possibility of another knee surgery with Dr. Jeremie Axe and Dr. Matt Handling.[50]  Dr. Jeremie Axe thought a revision surgery

---

[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.*
[50] *Id.*

for the ACL was all that was needed, but Dr. Handling proposed a two-stage procedure.[51] Then, McMullen went to the Rothman Institute for another opinion.[52] Generally speaking, the doctor at the Rothman Institute agreed with Dr. Handling's proposal.[53]

McMullen explained that he underwent the first stage of the procedure in August 2023 and was scheduled to have the second stage of the procedure on March 15, 2024 - the day after the Hearing.[54] McMullen confirmed that he had missed some time from work since the accident.[55] He returned to light duty work for a period of time, but he had been out of work since the August 2023 surgery.[56]

Dr. Jeremie Axe, an orthopedic surgeon, testified on behalf of McMullen.[57] He has provided McMullen with medical care since 2018.[58] In Dr. Jeremie Axe's opinion, McMullen sustained a re-tearing of his ACL as a result of the January 2023 work event.[59]

Dr. Jeremie Axe confirmed that McMullen first received care at First State Orthopedics ("FSO") in December 2017, when he was seen by another orthopedic

---

[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.* at 5.
[58] *Id.*
[59] *Id.*

surgeon, Dr. Michael Axe.[60] McMullen reported having a twisted knee injury at that time.[61] An MRI revealed an ACL tear with bone contusion and sprains of the medial and lateral collateral ligaments ("MCL" and "LCL"), but no meniscal pathology.[62] Dr. Michael Axe performed ACL reconstruction on McMullen in January 2018.[63] One month later, McMullen was doing quite well.[64] He had a good range of motion and minimal swelling, and he continued to follow up with FSO.[65] McMullen then returned to FSO in December 2018 because he reinjured his left knee at a wrestling tournament.[66] A second surgery was performed on December 20, 2018, and this time it was performed by Dr. Jeremie Axe.[67] It was a revision of the original ACL reconstruction and a repair of the menisci, which was a new injury.[68] McMullen received physical therapy following this surgery.[69]

Dr. Jeremie Axe confirmed that McMullen returned to FSO in December 2019, and did so because of another left knee injury.[70] McMullen had some swelling

---

[60] *Id.*
[61] *Id.*
[62] *Id.*
[63] *Id.*
[64] *Id.*
[65] *Id.*
[66] *Id*
[67] *Id.*
[68] *Id.*
[69] *Id.*
[70] *Id.*

after a twisting injury at a wrestling event two days earlier.[71] He was using a knee brace and crutches to ambulate.[72] An MRI was taken in January 2020, but it was difficult to assess because of the previous two surgeries.[73] Both the cruciate ligaments and the outer meniscus were all poorly visualized.[74] There seemed to be a slight increase in cartilage fissuring under the kneecap and some changes to the medial meniscus.[75] Dr. Jeremie Axe referred McMullen to Dr. Handling for another opinion.[76] Dr. Handling noted that the Lachman test was guarded on the left side, and there was a positive McMurray test on the lateral and medial sides.[77] Dr. Handling proposed physical therapy and possibly revision surgery.[78]

Dr. Jeremie Axe confirmed that McMullen underwent a third knee surgery on March 12, 2020.[79] Another ACL revision was performed along with a partial medial meniscectomy and cleaning out of foreign bodies.[80] As early as April 10, 2020, McMullen had only a small amount of effusion and an excellent range of motion.[81]

---

[71] *Id.*
[72] *Id.*
[73] *Id.*
[74] *Id.*
[75] *Id.*
[76] *Id.*
[77] *Id.*
[78] *Id.*
[79] *Id.* at 6.
[80] *Id.*
[81] *Id.*

The ACL reconstruction appeared intact, and the Lachman test was negative.[82] The MCL and LCL were stable on varus/valgus testing.[83] McMullen was released to return to work with a knee brace.[84] Follow-up appointments in June 2020 and November 2020 reflected no problems.[85]

Dr. Jeremie Axe stated that McMullen was seen next in a follow-up appointment on November 15, 2021.[86] During that time, McMullen was working his regular job and was doing so without a knee brace.[87] There was no effusion, and the Lachman test remained negative.[88] There was tenderness to palpation behind the inside of his left knee, and the doctor could feel a foreign body.[89] X-rays revealed that a metallic button formerly securing one of the prior ACL surgeries had dislodged and moved to the outer side of McMullen's left knee.[90] This was also confirmed later by an MRI, although that MRI showed that the ACL graft could not be visualized within the intercondylar notch.[91] On January 20, 2022, Dr. Jeremie Axe performed surgery to remove the button.[92] The knee remained stable, and nothing

---

[82] *Id.*
[83] *Id.*
[84] *Id.*
[85] *Id.*
[86] *Id.*
[87] *Id.*
[88] *Id.*
[89] *Id.*
[90] *Id.*
[91] *Id.*
[92] *Id.*

in that procedure affected the ACL.[93]   McMullen was seen during follow-up appointments in February 2022 and March 2022.[94]   His condition was excellent.[95]   He had retired from wrestling, but could work full duty.[96]   And, otherwise, McMullen could return to all other activity and follow-up with FSO as needed.[97]

On January 25, 2023, McMullen returned to Dr. Jeremie Axe's office to report that he hurt his knee at work on January 21, 2023.[98]   Specifically, McMullen reported that he was carrying a heavy reel that hit or tapped his left knee, and then the knee buckled.[99]   After the incident, McMullen was seen at Newark Urgent Care.[100]   There, he reported that he was carrying a spool of wire on his right shoulder when he picked up a second spool of wire with his left hand, and the second spool slammed into the outside of his left knee.[101]   Also, McMullen reported sharp lower left extremity pain and stiffness as well as a limited range of motion.[102]   McMullen was then taken out of work.[103]

---

[93] *Id.*
[94] *Id.*
[95] *Id.*
[96] *Id.*
[97] *Id.*
[98] *Id.*
[99] *Id.*
[100] *Id.*
[101] *Id.* at 6-7.
[102] *Id.* at 7.
[103] *Id.*

Dr. Jeremie Axe stated that the lack of documented swelling in the urgent care records was not significant.[104]  If McMullen had his native ACL and tore it, then swelling would be expected.[105]  However, McMullen had an ACL revision with allograft (cadaver tissue) that can take up to seven years to be properly vascularized.[106]  If such an ACL revision sustains a tear, swelling may not be part of the presentation.[107]

Dr. Jeremie Axe stated that McMullen had a positive Lachman test and moderate swelling when he saw him on January 25, 2023 - four days after the work event.[108]  The knee was aspirated with 10cc of fluid being removed.[109]  The fluid was non-bloody, but again, because McMullen had an ACL revision with allograft, the lack of blood did not indicate whether there was a recent tear.[110]  Dr. Jeremie Axe kept McMullen on no-work status.[111]  Another MRI was taken on April 5, 2023, but visibility was still an issue due to the prior surgical interventions.[112]  Nevertheless,

[104] *Id.*
[105] *Id.*
[106] *Id.*
[107] *Id.*
[108] *Id.*
[109] *Id.*
[110] *Id.*
[111] *Id.*
[112] *Id.*

13

the MRI report stated that no intact ACL fibers could be visualized, and the graft was most likely disrupted, which was a comment that had not been on prior MRIs.[113]

Dr. Jeremie Axe recommended that McMullen undergo another ACL reconstruction and possibly in a staged procedure with bone graft.[114] McMullen was referred to Dr. Steven Cohen, and he recommended a staged procedure with bone grafting and a revision ACL.[115] In Dr. Jeremie Axe's opinion, the need for this surgery was causally related to the January 2023 work event that re-tore the ACL.[116] There is no evidence to support the theory that the ACL was re-torn prior to the January 21, 2023 event.[117]

Tyler Cochrane ("Cochrane") testified on behalf of Employer.[118] Cochrane was the general manager at the gym McMullen attended.[119] Cochrane provided a computer printout of McMullen's attendance at the gym from July 2022 through February 9, 2024.[120] Members gain access to the gym by scanning a key fob that registers in a computer.[121] A printout reflects that McMullen attended the gym

---

[113] *Id.*
[114] *Id.*
[115] *Id.*
[116] *Id.*
[117] *Id.*
[118] *Id.* at 8.
[119] *Id.*
[120] *Id.*
[121] *Id.*

regularly both before and after the January 21, 2023 work event.[122]  For example, the printout shows that McMullen attended the gym on January 29, 2023 and January 31, 2023, as well as every day from February 3, 2023 through February 7, 2023.[123]

Ethan Argot testified that he is an investigator with Advance Surveillance.[124] He conducted surveillance of McMullen on May 8, 2023 and May 10, 2023.[125]  The Board declined to view the surveillance video because it was taken about three and a half months after the work accident, and no party disputes that the medical treatment McMullen received had been reasonable and necessary.[126]  The surveillance was not likely to provide relevant evidence as to causation.[127]

Dr. Eric T. Schwartz, an orthopedic surgeon, testified by deposition on behalf of Employer.[128]  Dr. Schwartz examined McMullen on July 11, 2023, and reviewed pertinent medical records.[129]  In Dr. Schwartz's opinion, even if the work accident occurred, it was incidental to McMullen's multi-year history of chronic left knee instability, and it was not the reason for the medical treatment provided.[130]

---

[122] *Id.*
[123] *Id.*
[124] *Id.*
[125] *Id.*
[126] *Id.*
[127] *Id.*
[128] *Id.*
[129] *Id.*
[130] *Id.*

Dr. Schwartz reviewed McMullen's prior medical history going back to 2017 with respect to the left knee.[131] McMullen injured his ACL in December 2017.[132] The injury included bone contusion and sprains of the MCL and LCL.[133] The first reconstruction of the ACL, in January 2018, used a hamstring autograft.[134] McMullen had about 95% strength by September 2018.[135] In December 2018, he reported another wrestling injury.[136] The first ACL reconstruction had failed, and it was completely disrupted.[137] Again, there were bone contusions consistent with an acute injury that included tearing of the collateral ligament and lateral meniscus.[138] Also, cartilage damage under the knee had progressed.[139] A second surgery was performed in December 2018, and it was a revision ACL reconstruction.[140] This time it included a patellar tendon autograft - because the hamstrings could not be used twice - and medial and lateral meniscus repairs.[141] In June 2019, McMullen reported a painful snap in the left knee during physical therapy.[142] In September

---

[131] *Id.*
[132] *Id*.
[133] *Id.*
[134] *Id.*
[135] *Id.*
[136] *Id.*
[137] *Id.*
[138] *Id.*
[139] *Id.*
[140] *Id.* at 8-9.
[141] *Id*. at 9.
[142] *Id.*

2019, he reported that he had pain while walking.[143]  In December 2019, McMullen reported left knee pain and swelling after he incurred a twisting injury while wrestling.[144]  The ACL reconstruction failed again.[145]  An MRI showed a surgical artifact, but the ACL graft could not be visualized.[146]  In other words, the ACL graft was not there.[147]  A third surgery was performed in March 2020 for an ACL reconstruction failure, another meniscal tear, and evidence of a chondral lesion of the patella.[148]  This time the ACL reconstruction was completed using an allograft because his native tissue - hamstring and patellar tendons - had already been used.[149]

Dr. Schwartz confirmed that McMullen reported left knee problems again in November 2021.[150]  An MRI of McMullen's left knee was taken on November 30, 2021.[151]  From that MRI, McMullen's medial meniscus looked torn again, and the lateral meniscus was potentially torn as well.[152]  The MRI showed that the ACL graft had failed again.[153]  There was widening of the tibial tunnel, which is consistent with graft failure, and widening of the marrow edema, which is consistent with a pivot-

---

[143] *Id.*
[144] *Id.*
[145] *Id.*
[146] *Id.*
[147] *Id.*
[148] *Id.*
[149] *Id.*
[150] *Id.*
[151] *Id.*
[152] *Id.*
[153] *Id.*

type injury.[154]  Importantly, the ACL was no longer functioning, and it was torn in November 2021.[155]  In January 2022, Dr. Jeremie Axe performed a button removal.[156]  However, an arthroscopy was not completed, and no attempt was made to address the ACL.[157]

Dr. Schwartz stated that McMullin described the mechanism of the January 2023 injury when he was examined on July 11, 2023.[158]  McMullin said that he was moving a spool of wire when the spool hit his left knee.[159]  The contemporaneous record from the urgent care was that the spool "slammed" into the lateral aspect of the left knee.[160]  However, the urgent care record noted that there was no observation of any abrasions, gross swelling, lacerations, or contusions.[161]  There was also no erythema and no ligamentous laxity in the left knee.[162]  The only left knee abnormalities noted on examination were moderate flexion limitation and moderate lateral tenderness.[163]

---

[154] *Id.*
[155] *Id.*
[156] *Id.*
[157] *Id.*
[158] *Id.*
[159] *Id.*
[160] *Id.*
[161] *Id.*
[162] *Id.* at 9-10.
[163] *Id.* at 10.

Dr. Schwartz explained that the most likely mechanism for an injury to an ACL is a new pivoting injury rather than an impact.[164] Contact with the knee would not produce the need for an ACL reconstruction.[165] If there had been an acute injury, then immediate swelling and some bruising around the knee would follow.[166] McMullen's physical examination at the urgent care was inconsistent with an acute re-tearing of a prior ACL reconstruction.[167] An x-ray taken on January 21, 2023 identified no acute process.[168] On physical examination, there was no evidence of any pathology in the knee that could be particularly ascribed to the work event.[169]

Dr. Schwartz confirmed that McMullen returned to Dr. Jeremie Axe on January 25, 2023.[170] At that time, Dr. Jeremie Axe recorded that McMullen had moderate effusion, mild swelling, and diffuse tenderness.[171] His flexibility was normal.[172] The Lachman and anterior drawer tests were positive.[173] Dr. Jeremie Axe removed some fluid from McMullen's knee, including 10cc of serous fluid.[174]

---

[164] *Id.*
[165] *Id.*
[166] *Id.*
[167] *Id.*
[168] *Id.*
[169] *Id.*
[170] *Id.*
[171] *Id.*
[172] *Id.*
[173] *Id.*
[174] *Id.*

19

Blood, not just serous fluid, would be in that area if there was an ACL injury.[175] Serous fluid is more consistent with chronic ACL instability rather than acute trauma.[176]

An updated MRI was taken on April 5, 2023, and it was compared to a prior MRI from November 2021.[177] Both MRIs showed essentially the same result with respect to the condition of both the medial and lateral meniscus.[178] There were no acute changes.[179] With respect to the ACL graft, the November 2021 MRI showed that the graft within the intercondylar notch could not be visualized.[180] It also showed that the graft within the tibial tunnel was thickened and amorphous with widening of the tibial tunnel.[181] The April 2023 MRI only showed that the ACL graft could not be visualized.[182] Both MRIs show that McMullen did not have a functioning ACL graft in November 2021 and April 2023.[183] The graft was already torn in November 2021.[184] Both MRIs also showed that the collateral ligaments were intact, and there was no significant joint effusion.[185] The significant difference

---

[175] *Id.*
[176] *Id.*
[177] *Id.*
[178] *Id.*
[179] *Id.*
[180] *Id.*
[181] *Id.*
[182] *Id.*
[183] *Id.*
[184] *Id.*
[185] *Id*. at 10-11.

in the two MRIs was that the earlier MRI showed evidence of bone marrow swelling and edema, consistent with a bone bruise associated with an acute pivot injury.[186] The April 2023 MRI does not display any acute injury.[187] Likewise, nothing on the May 11, 2023 CT scan of the left knee showed any acute findings.[188] CT scans display bone bruises well.[189] And, the May 2023 CT scan did not show any evidence of bruising.[190]

In Dr. Schwartz's opinion, the medical evidence does not support the conclusion that an acute traumatic event occurred in January 2023.[191] McMullen had recurrent left knee ACL insufficiency with progressive degenerative joint disease.[192] The doctor explained that given McMullen's prior knee condition as shown on the 2021 MRI, his knee could have given way and required further treatment because of an occurrence as simple as a walk down the street.[193] No acute injury occurred in January 2023.[194] The medical treatment McMullen received was

---

[186] *Id*. at 11.
[187] *Id.*
[188] *Id.*
[189] *Id.*
[190] *Id.*
[191] *Id.*
[192] *Id.*
[193] *Id.*
[194] *Id.*

reasonable and necessary treatment, but it was not related to the January 2023 work event.[195]

## III.   THE PARTIES' CONTENTIONS

McMullen contends in his Opening Brief that the factual record does not support the Board's finding that an identifiable industrial accident is difficult to identify in this case.[196]   However, McMullen concedes that the Board's statement is not dispositive in light of the Board's further findings regarding McMullen's injuries.[197]   He addresses this point in his Opening Brief to demonstrate that the totality of the Board's findings are not supported by the evidence.[198]   McMullen asserts that "[t]he Board's statement in its decision that [his] knee 'just buckled' and there was no evidence of any impact on the knee at all to establish an 'accident' misses the mark on the legal requirement to establish that a work accident occurred."[199]   McMullen argues that the testimony presented to the Board clearly establishes that his injury arose out of and in the course of his employment with Employer, and he was engaged in a work activity at the time he became symptomatic.[200]

---

[195] *Id.*
[196] Op. Br. at 18, D.I. 12.
[197] *Id.*
[198] *Id.*
[199] *Id.* at 18-19.
[200] *Id.* at 19.

The gravamen of McMullen's argument on appeal is that substantial evidence did not exist for the Board to conclude that the medical evidence fails to show that the work accident resulted in an injury to his left knee.[201] McMullen notes that under *Reese v. Home Budget Center,*[202] the acceptance of the occurrence of an identifiable accident would necessitate the Board's consideration of causation using the "but for" standard.[203] McMullen asserts that he "met his burden of showing, by a preponderance of the evidence, that but for [his] employment and specifically, the work accident on January 21, 2023, [his] left knee treatment (or the aggravation/acceleration of that left knee condition) would not have occurred."[204] McMullen identifies three issues of fact on which the Board agreed with the opinions of Dr. Schwartz, but contends that these opinions do not amount to substantial evidence.[205] He concludes that the Court should find that the record simply does not support the Board's analysis of the evidence, in particular, its reliance on the testimony of Dr. Schwartz.[206]

In its Answering Brief, Employer contends that the Board's decision is supported by substantial evidence and is free from legal error.[207] Employer agrees

---

[201] *Id*. at 21.
[202] 619 A.2d 907, 910 (Del. 1992).
[203] Op. Br. at 21-22, D.I. 12.
[204] *Id*. at 22.
[205] *Id*. at 23-26.
[206] *Id*. at 27.
[207] Ans. Br. at 12, D.I. 13.

that under *Reese,* McMullen must prove that his injury would not have occurred "but for" his employment.[208] Employer adds that McMullen had to show that he would not have suffered an acute left knee ACL disruption "but for" the January 21, 2023 work incident.[209] And, the evidence was insufficient for McMullen to meet this burden of proof.[210]

In his Reply Brief, McMullen asserts that Employer reiterated much of the Board's decision and did not rectify the problems and discrepancies he raised regarding the lack of evidence in the record to support the Board's decision.[211] McMullen also states that Employer failed to address the case law that he cited.[212] He does state, however, that Employer addressed the mechanism of the injury and the opinions of Dr. Schwartz versus Dr. Jeremie Axe.[213]

## IV. STANDARD OF REVIEW

The Board's decision must be affirmed so long as it is supported by substantial evidence and is free from legal error.[214] Substantial evidence is that which a

---

[208] *Id*. at 13.
[209] *Id.*
[210] *Id.*
[211] Reply Br. at 5, D.I. 14.
[212] *Id.*
[213] *Id.*
[214] *Conagra/Pilgrim's Pride, Inc. v. Green*, 2008 WL 2429113, at *2 (Del. June 17, 2008).

reasonable mind might accept as adequate to support a conclusion.[215] While a preponderance of evidence is not necessary, substantial evidence means "more than a mere scintilla."[216] Questions of law are reviewed *de novo*,[217] but because the Court does not weigh evidence, determine questions of credibility, or make its own factual findings,[218] it must uphold the decision of the Board unless the Court finds that the Board's decision "exceeds the bounds of reason given the circumstances."[219]

## V. DISCUSSION

The Board summarized its decision as follows:

> In Claimant's case, it is difficult to even identify an "industrial accident" and to the extent that there was such an accident, the evidence is insufficient that it contributed anything at all to the left knee condition. In short, the Board agrees with Dr. Schwartz that there is insufficient evidence to conclude that an acute injury of any kind occurred.[220]

Stated differently, the Board concluded that there were two bases for denying McMullen's claim. First, he failed to establish that an industrial accident occurred.

---

[215] *Kelley v. Perdue Farms*, 123 A.3d 150, 153 (Del. Super. 2015) (citing *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009)).
[216] *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988).
[217] *Kelley*, 123 A.3d at 152–53 (citing *Vincent v. E. Shore Markets*, 970 A.2d 160, 163 (Del. 2009)).
[218] *Bullock v. K-Mart Corp.*, 1995 WL 339025, at *2 (Del. Super. May 5, 1995) (citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66–67 (Del. 1965)).
[219] *Bromwell v. Chrysler LLC*, 2010 WL 4513086, at *3 (Del. Super. Oct. 28, 2010) (quoting *Bolden v. Kraft Foods*, 2005 WL 3526324, at *3 (Del. Dec. 21, 2005)).
[220] *McMullen*, No. 1532427, at 12-13.

And second, even if such an accident did occur, it had nothing to do with McMullen's injury.

McMullen argues that the factual record does not support the Board's finding that an industrial accident is difficult to identify in this case.[221] But, as McMullen concedes, the Board's "statement in its decision that an 'industrial accident' in this case is difficult to identify alone is not dispositive of the matter in light of their further findings regarding [McMullen's] injury[.]"[222] Thus, McMullen appears to recognize the dual, alternative bases for the Board's decision.

The Findings of Fact and Conclusions of Law section of the Board's decision includes the following:

> [T]he Board agrees with Dr. Schwartz that there is insufficient evidence to conclude that an acute injury of any kind occurred.
>
> First, as to the incident itself, Claimant stated that his knee just buckled. He did not trip or fall. While the initial medical records reported that the knee had received an impact (either being "hit" or "slammed" by the wire reel), Claimant in his testimony before the Board denied any such impact occurred. He was carrying a reel near the left knee, but he denied that the reel struck the knee. This testimony is consistent with the objective findings on medical examination. At Urgent Care, Claimant had no swelling, no abrasions, no laceration and no contusions. There was no erythema. In short, there was no evidence that there had been any impact on the knee at all. The knee just buckled. Dr. Axe agreed that Claimant's ACL tear

---

[221] Op. Br. at 18, D.I. 12.
[222] *Id.*

could happen without any contact and with no force being applied to the knee. If that is what happened, it is difficult to say that there is a causal connection between the employment and an ACL tear that just happens without any contact or force being applied to the knee.

Dr. Schwartz noted that, rather than impact, the most likely mechanism for an ACL tear is a pivoting injury. However, there is also no evidence that that happened in Claimant's case. Claimant, in his testimony, could not recall any pivoting or twisting event. The April 2023 MRI was negative for bone marrow swelling and edema, which would be objective evidence of a bone bruise associated with an acute pivot injury. Certainly, Claimant's earlier MRIs (when there were documented twisting injuries) had shown such swelling and edema. The lack of it in the April 2023 MRI suggests that no twisting incident occurred, consistent with Claimant's own testimony that he recalls no such twisting.

However, even if the Board were to accept the knee buckling by itself (without any impact or twisting event) as an "accident," there is still the question of what effect that accident had on Claimant's knee condition. As noted already, there was no immediate swelling noted. Dr. Axe gave an explanation of how the allograft from the last ACL reconstruction might not cause swelling when torn. The point, though, is that the non-swelling at Urgent Care does not support the presence of an acute injury. Likewise, when Dr. Axe saw Claimant on January 25, he aspirated 10cc of non-bloody serous fluid. Dr. Schwartz noted that bloody fluid would have suggested an acute injury. Dr. Axe argued that it might not be bloody in Claimant's case because of the cadaver tissue used but, again, the point is that the clear serous fluid does not establish the presence of an acute injury. However, the major problem with Claimant's case is the April 2023 MRI compared to the November 2021 MRI. First, as Dr. Schwartz observed, one big difference between the two is that the November 2021 MRI actually did show bone marrow swelling and edema

27

as one would expect for an acute injury. The April 2023 MRI did not. Second, of course, is that neither MRI could visualize the ACL graft. If the inability to visualize it in April 2023 was evidence that the graft had ruptured, then the inability to visualize it in November of 2021 leads to the reasonable conclusion that it was already disrupted back in 2021. Dr. Axe testified that the knee was stable in January of 2022 (when the button removal occurred), but the MRI objectively shows what it showed - that the graft had already failed, as Dr. Schwartz testified.

Thus, the medical evidence fails to show that any event on January 21, 2023 either tore the ACL graft (having been torn long before that) or resulted in any acute injury to Claimant. While the evidence is clear that Claimant's ACL reconstruction had failed for the third time, the evidence is insufficient to show that that failure was in any way causally related to his employment. To succeed on his petition, Claimant has the burden of showing, by a preponderance of the evidence, that there is a reasonable causal connection between the injury and the employment. Claimant's evidence fails to meet this burden.[223]

It is clear from the restated paragraphs above that the Board based its decision on substantial evidence in the form of its reliance on the opinions of Dr. Schwartz.[224] Dr. Jeremie Axe agreed that McMullen's ACL tear could have happened without any contact and with no force being applied to the knee. Dr. Schwartz opined that, in the absence of any impact, which McMullen denied, the most likely mechanism for an

---

[223]*McMullen*, No. 1532427, at 13-15.

[224] Dr. Schwartz's opinions were first expressed at his deposition on February 23, 2024, and then discussed at length during the hearing before the Board on March 14, 2024. Dep. Tr. of Dr. Eric T. Schwartz, Ex. E, D.I. 12; IAB Hr'g Tr. March 14, 2024, at 69-107, Ex. B, D.I. 12.

ACL tear is a pivoting injury. But there was no evidence of a pivoting or twisting injury either. The Board concluded that there was no accident because McMullen's knee simply buckled, as Dr. Axe said could happen, without any external event causing it to do so. The Board also concluded, based on the testimony of Dr. Schwartz and MRI scans from November 2021 and April 2023 that McMullen's ACL graft had already failed well before January 21, 2023.

The Court will not weigh the evidence presented to the Board,[225] including the opinions of Dr. Schwartz and Dr. Jeremie Axe. The Court finds that the Board's decision is supported by substantial evidence both when it decided that the injury for which McMullen seeks payment of medical expenses and total disability benefits was neither an industrial accident, nor alternatively, causally related to any work accident. Furthermore, the Board's decision is free from legal error.

## VI.    CONCLUSION

For the foregoing reasons, the decision of the Industrial Accident Board is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.

---

[225] *See Bullock,* 1995 WL 339025, at *2 (citing *Johnson,* 213 A.2d at 66–67).